UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAWN DAMON BARTH,

Plaintiff,

v.

EUSEBIO MONTEJO,

Defendant.

No. 2:19-cv-1874 WBS DB P

ORDER AND FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendant was deliberately indifferent to his medical needs, retaliated against him, and discriminated against him. Presently before the court is defendant's fully briefed motion for summary judgment and plaintiff's motion for discovery. For the reasons set forth below, the undersigned will deny plaintiff's motion for discovery and recommend that the motion for summary judgment be granted.

**BACKGROUND**

**I. Relevant Procedural History**

This action commenced on September 18, 2019,[1] when plaintiff filed the original complaint. (ECF No. 1.) The undersigned screened and dismissed the original and first amended

[1] Under the prison mailbox rule, a document is deemed served or filed on the date a prisoner signs the document and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by incarcerated inmates).

complaints for failure to state a claim. (ECF Nos. 5, 14.) The undersigned determined the second amended complaint stated potentially cognizable deliberate indifference, retaliation, and discrimination claims against defendant Montejo. (ECF No. 21.) Following service this action was referred to the court's Post-Screening ADR (Alternative Dispute Resolution) Project. (ECF No. 28.) A settlement conference was held on January 19, 2021. (ECF No. 42.) The case did not settle. (Id.)

Thereafter, a discovery and scheduling order was issued. At the close of discovery, defendant filed the instant motion for summary judgment. (ECF No. 63.) Plaintiff filed an opposition (ECF No. 78), and defendant filed a reply (ECF No. 81).

**II. Allegations in the Complaint**

Plaintiff claims the events giving rise to the claim in this action occurred while he was incarcerated at California Medical Facility ("CMF"). (ECF No. 19 at 1.) Defendant Dr. Eusebio Montejo is the sole defendant.

Plaintiff alleges that he has numerous physical ailments, including chronic obstructive pulmonary disorder, emphysema, rheumatoid arthritis, degenerative disk disease, and food allergies. (Id. at 2.) Plaintiff alleges that in July 2019, during an appointment with defendant Montejo, Montejo asked how plaintiff "could bend over for sex" if he had such severe back problems. (Id. at 7.) Montejo informed plaintiff that he did not feel plaintiff required a back brace or a walker. Plaintiff then filed a complaint against Montejo under the Prison Rape Elimination Act ("PREA"). Plaintiff also filed a complaint with the California Medical Board.

Plaintiff alleges Montejo retaliated against him for filing the complaints by reducing plaintiff's disability classification and depriving plaintiff of his walker, a shower chair, and a nebulizer. Plaintiff contends other inmates told him that in September 2019, Montejo called plaintiff a "faget." (Id. at 10.) Also in September 2019, Montejo changed plaintiff's work classification, resulting in plaintiff being assigned a job he could not physically do. (Id. at 11.) Plaintiff further alleges that Montejo failed to follow up on other doctor's recommendations that plaintiff have shoulder surgery.

////

**PLAINTIFF'S REQUEST FOR DISCOVERY PURSUANT TO FRCP 56(d)**

At the outset of plaintiff's motion for summary judgment he requests that the court issue an order compelling defendant to provide additional discovery pursuant to Federal Rule of Civil Procedure 56(d). (ECF No. 78 at 2-3.) Plaintiff claims he filed a PREA complaint "on or around 6/17/19." He further claims "this (and other) documents have somehow gone 'missing.'" (Id. at 2.) Plaintiff argues that he needs these appeals to oppose the motion for summary judgment. (Id. at 3.)

In the reply defendant states that all inmate appeals and PREA complaints have been turned over to plaintiff and the request is too vague to satisfy the requirements of Rule 56(d). (ECF No. 81 at 2, 7.) Counsel for defendant has also included a declaration stating that he requested a copy of all grievances filed by plaintiff and the grievances were sent to plaintiff on January 19, 2022. (ECF No. 81 at 11.)

Under Federal Rule of Civil Procedure 56(d) the court may defer ruling on the motion for summary judgment and permit a party to conduct additional discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The affidavit or declaration must identify "specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." Tatum v. City and County of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006).

"[S]ummary judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined pro se plaintiffs." Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004). Summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be "fruitless" with respect to the proof of a viable claim. Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988). Moreover, "'[t]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past.'" Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995) (quoting California Union Ins. Co. v. American Diversified Sav. Bank, 914 F.2d 1271, 1278 (9th Cir. 1990)).

"A party asking for more time to conduct discovery to oppose summary judgment bears the burden of demonstrating that the evidence sought actually exists." Green v. Lee, No. C08-

2729 TEH, 2011 WL 3607556 at *2 (N.D. Cal. Aug. 16, 2011) (citing Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1990)); see also Nidds v. Schindler Elavator Corp., 113 F.3d 912, 921 (9th Cir. 1996) (citation omitted) ("The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, . . . , and that it would prevent summary judgment.").

Plaintiff alleges that a PREA complaint made "on or around 6/17/19 . . . (and other) documents have somehow gone 'missing like Appeals on this subject matter." (ECF No. 78 at 2.) However, plaintiff has not specified which appeals have gone missing. Further, as set forth below, it does not appear that plaintiff filed a PREA complaint in June 2019. Additionally, the court previously determined that plaintiff was not diligent in seeking discovery. (See ECF No. 71.) Finally, counsel for defendant avers that all appeals and PREA complaints were turned over to plaintiff. (ECF No. 81 at 2, 7.) Accordingly, plaintiff's request for discovery pursuant to Rule 56(d) will be denied.

## SUMMARY JUDGMENT

### I. The Parties Briefing

#### A. Defendant's Motion

Defendant argues that the motion should be granted because the undisputed facts show that defendant (1) "affirmatively treated Plaintiff and was not deliberately indifferent to Plaintiff's serious medical needs;" (2) defendant's "decision to take away Plaintiff's assistive devices was not retaliatory, but rather was based upon his sound medical judgment; (3) offensive statements about a prisoner's sexual orientation are not sufficient to establish an equal-protection claim;" and (4) defendant "is entitled to qualified immunity." (ECF No. 63-2 at 1-2.)

#### B. Plaintiff's Opposition

Plaintiff argues that "Defendants have either purposely or inadvertently mistated [sic] facts and ever erroneously claim that Exhibit 7[2] to their Motion is Something it's not." (ECF No.

[2] Defendant's exhibits are marked by letters rather than numbers. (See ECF No. 63-3.) However, the court notes that exhibit 7 to the operative complaint (ECF No. 19 at 97) contains a mental health chrono dated June 17, 2019, that plaintiff argues is a PREA complaint filed in response to his June 12, 2019, appointment with defendant. Defendant has not attached the June 17, 2019, mental health referral chrono as an exhibit to the motion for summary judgment.

78 at 7-8.) Plaintiff disputes defendant's claim that his walker was taken before plaintiff made a PREA complaint and states that he began asserting his PREA claim as early as June 14, 2019. (Id. at 8.) Plaintiff further argues that the facts support his claim that defendant treated him differently because of his sexual orientation and that he removed his walker and failed to provide adequate medical care in retaliation after plaintiff filed complaints.

**C. Defendant's Reply**

Defendant argues that the evidence contradicts plaintiff's account that the walker was removed in retaliation rather than because defendant determined it was not medically necessary. (ECF No. 81 at 1.) Defendant further argues that removal of the walker amounts to a difference of opinion concerning the proper course of treatment as opposed to deliberate indifference. (Id. at 1-2.)

## II. Summary Judgment Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

////

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

## III. Material Facts

Defendant filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a) along with their motion for summary judgment. (ECF No. 63-3.) Plaintiff's filing in opposition to defendant's motion for summary judgment fails to comply with Rule 260(b). (See ECF No. 78.) Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other

document relied upon in support of that denial." However, in light of plaintiff's pro se status the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact in defendant's statement of undisputed facts.

The court is mindful of the Ninth Circuit's instruction that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition that have evidentiary support in the record will be considered.

**A. Undisputed Facts**

At all times relevant to the claim, plaintiff was a state inmate housed at CMF. (DSUF (ECF No. 63-3) at ¶ 1; ECF No. 19 at 2, 7.) Defendant Montejo was a physician at CMF. (DSUF (ECF No. 63-3) at ¶ 2; ECF No. 19 at 3.) Montejo was plaintiff's primary care physician from May 31, 2019, to March 1, 2020. (DSUF (ECF No. 63-3) at ¶ 4.)

Plaintiff's first appointment with defendant took place on June 12, 2019. (DSUF (ECF No. 63-3) at ¶ 5.) During the appointment, plaintiff reported to defendant that he fell 32 feet in 1997 and continues to suffer pain in his neck, shoulder, and back pain as a result. (DSUF (ECF No. 63-3) at ¶ 6.) Defendant reviewed plaintiff's use of a back brace. (DSUF (ECF No. 63-3) at ¶ 7.) Plaintiff told defendant he had received the brace weeks prior to the appointment, he used it daily, and that it helped with his pain. (Id.) Following an exam, defendant concluded that plaintiff had moderate degenerative disc and facet joint disease "with no acute osseous abnormality." (DSUF (ECF No. 63-3) at ¶ 8.) Defendant further found no acute findings with regard to plaintiff's hip pain. (DSUF (ECF No. 63-3) at ¶ 9.)

Defendant's treatment plan for plaintiff included continuing medications, ordering testing to determine whether plaintiff suffered from Chronic Obstructive Pulmonary Disease ("COPD") or asthma, a return appointment to review plaintiff's breathing treatments, and a request for evaluation by a physical therapist. (DSUF (ECF No. 63-3) at ¶ 10.)

////

Defendant discussed the importance of core strength with plaintiff. (DSUF (ECF No. 63-3) at ¶ 11.) Defendant advised plaintiff that use of his back brace could make plaintiff's back pain worse, cause additional back pain, and increase the frequency of acute back pain. (Id.) Defendant also advised plaintiff that use of the walker "could exacerbate his neck and shoulder pain, precipitate neck pain, prolong recovery from acute flares, and increase frequency of flares." (Id.) The following day, defendant requested a telemedicine appointment with a rheumatologist for plaintiff. (DSUF (ECF No. 63-3) at ¶ 13.)

Defendant saw plaintiff on July 3, 2019, regarding an allergic reaction. (DSUF (ECF No. 63-3) at ¶ 14.) During this visit, plaintiff informed defendant that his back pain had improved with decreased use of the back brace. (Id.) Defendant ordered a wedge pillow at plaintiff's request. (Id.) Defendant's notes from the appointment indicate that plaintiff was able to sit and stand and that his stance and posture were normal. (Id.)

Plaintiff was seen by physical therapist Ryan on July 19, 2019. (DSUF (ECF No. 63-3) at ¶ 15.) After an evaluation and review of findings from 2015, Ryan determined plaintiff had moderate degenerative disc and facet joint disease. (Id.) Plaintiff informed Ryan that he had fallen in the shower on July 16, 2019, while bending down to pick something up. (DSUF (ECF No. 63-3) at ¶ 16.) Plaintiff's wounds were bandaged in the triage and treatment area (TTA) the following day. (Id.) Plaintiff informed Ryan that he experienced the same pain he had been having for the past year, with no new pain. (Id.) Plaintiff further told Ryan that he had been using a rolling walker for approximately six weeks, "but believed his legs were strong as he was able to walk long distances." (Id.)

Plaintiff filed a grievance on July 20, 2019. (ECF No. 78 at 34-35; ECF No. 81 at 1.) Therein, plaintiff alleged that defendant acted biased and indifferent towards him. He expressed his dissatisfaction with defendant's medical care and his belief that defendant was biased toward him because of his sexuality. (ECF No. 78 at 35.)

Defendant received a message from physical therapist Ryan on July 22, 2019. (DSUF (ECF No. 63-3) at ¶ 17.) His message indicated that he had evaluated plaintiff on July 19, 2019, and plaintiff had reported falling in the shower. (Id.) Defendant advised Ryan that under the

circumstances a fall would not "preclude" physical therapy. (DSUF (ECF No. 63-3) at 41.) Defendant requested that Ryan determine whether plaintiff's continued use of a walker was appropriate.

On July 29, 2019, plaintiff refused to attend his appointment with Dr. Montejo. (DSUF (ECF No. 63-3) at ¶ 19.) The following day Dr. Montejo determined, based on review of plaintiff's chart, imaging history, patient history, and examination that plaintiff did not have a medical indication for the use of a walker. (DSUF (ECF No. 63-3) at ¶ 20.) Plaintiff was allowed to continue his use of a cane as well as a shower chair. (Id.)

On August 8, 2019, plaintiff reported to the nurses' line and stated several complaints. He told the nurse that he was suffering from "rectal bleeding, right abdominal/groin area pain," and that he had "several falls since his walker was discontinued." (DSUF (ECF No. 63-3) at ¶ 21.) Plaintiff asked to be seen by a doctor other than defendant. (Id.) The nurse noted that plaintiff had redness on his right forearm, but no swelling and his skin was intact. The nurse also noted that plaintiff did not appear to be in distress. (Id.) Plaintiff was offered an appointment with defendant but declined. (Id.)

On September 6, 2019, plaintiff had a telemedicine appointment with Dr. Hsu. (DSUF (ECF No. 63-3) at ¶ 22.) Dr. Hsu noted that plaintiff reported joint pain, swelling in the knees and hands, and morning stiffness. Plaintiff also reported that after his transfer to CMF his walker was taken from him, and as a result he fell. (Id.) Dr. Hsu referred plaintiff to his prior rheumatologist Dr. Vo.

Plaintiff was seen by defendant on September 10, 2019. (DSUF (ECF No. 63-3) at ¶ 23.) At the appointment, plaintiff complained of increased back pain that radiated to his left hip and down his leg to his knee. (Id.) Plaintiff informed defendant that he was not supposed to work in the kitchen and asked to be removed from kitchen duty. Defendant advised that he was responsible for determining any physical limitations, but that he was not responsible for determining plaintiff's work area. (Id.)

Plaintiff spoke with Dr. Fazia regarding the appeal he filed in response to defendant's removal of his walker. (DSUF (ECF No. 63-3) at ¶ 24.) Plaintiff claimed he had multiple recent

falls, but Dr. Fazia could not find reports of recent falls. (Id.) When plaintiff was advised to address his back pain with defendant, he "became upset and said he was adding Dr. Fazia's name to his lawsuit." (Id.)

Plaintiff was seen by Dr. Vo on October 8, 2019, for a telemedicine appointment. (DSUF (ECF No. 63-3) at ¶ 25.) "Dr. Vo reviewed plaintiff's charts, labs and current medication list with plaintiff." Plaintiff advised that even though he was taking his medications, he was suffering from increased joint pain and his back and hip hurt. Dr. Vo asked plaintiff to show him his range of motion, but plaintiff refused to demonstrate. Dr. Vo recommended that plaintiff undergo an MRI of his left hip and continuation of his current therapy. (Id.) Plaintiff had an MRI of his left hip on December 5, 2019. (DSUF (ECF No. 63-3) at ¶ 26.)

Defendant saw plaintiff on January 10, 2020, relative to a complaint of wrist pain. (DSUF (ECF No. 63-3) at ¶ 27.) Defendant noted that plaintiff complained of joint pain but did not appear to be limited in any obvious way based on his level of function. Defendant discontinued plaintiff's disability vest because he found that plaintiff did not meet the criteria. He also found that plaintiff's use of a back brace was more likely to cause harm than it would be to benefit based on a number of factors. (Id.) Defendant ordered an x-ray of plaintiff's left hip on January 16, 2020. (DSUF (ECF No. 63-3) at ¶ 28.)

After plaintiff was transferred to a different facility, he was seen by a new doctor who renewed plaintiff's use of a walker. (ECF No. 78 at 25.)

Plaintiff filed a PREA complaint against defendant on August 1, 2019. (DSUF (ECF No. 63-3) at ¶ 29.) Plaintiff filed a grievance on August 2, 2019, with the same allegations. (DSUF (ECF No. 63-3) at ¶ 30.)

**B. Disputed Facts**

Plaintiff states he filed a PREA complaint[3] on June 27, 2019. (ECF No. 78 at 21, 29.) Plaintiff states he "repeatedly fell at times injuring" himself after his walker was removed. (Id. at 23.)

---

[3] As discussed below, this document is labeled as a "Mental Health Referral Chrono," states that it is a routine PREA screening form and does not mention defendant or reference plaintiff's claims against defendant.

Plaintiff states on September 11, 2019, he saw defendant in a hallway. (Id. at 25.) Plaintiff asked defendant why he changed his medical classification code, defendant "called [plaintiff] a 'faggot' and kept walking." (Id. at 25.)

## IV. Discussion

### A. Deliberate Indifference

#### 1. Legal Standards

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prisoner officials responded to the serious medical need with deliberate indifference. See Id. at

834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**2. Analysis**

**a. Walker**

Defendant argues he is entitled to summary judgment on plaintiff's deliberate indifference claim because his decision to discontinue plaintiff's use of a walker was based on his examination of plaintiff, review of plaintiff's medical records, as well as input from a physical therapist and a rheumatologist. (ECF No. 63-2 at 10.) Defendant further argues that at most plaintiff has alleged a disagreement concerning a course of treatment. (Id.)

In an exhibit attached to plaintiff's opposition, defendant states he does not find a walker indicated for plaintiff based on his examination, as well as plaintiff's visible level of function and self-report of disability. (ECF No. 78 at 39.) Defendant further noted that the walker was initially given to plaintiff after he fell, but based on his review of imaging and an exam, he determined that plaintiff did not have a mobility or balance condition that would be corrected by a walker. (Id.)

Defendant's decision to begin with conservative treatment does not support a finding of deliberate indifference. See Rodriguez v. Cate, 474 Fed. Appx. 614 (9th Cir. 2012) (affirming grant of summary judgment in favor of defendant doctor who pursued a conservative treatment plan because plaintiff's disagreement with medical opinion was not sufficient to constitute deliberate indifference). Additionally, plaintiff has not produced evidence indicating that defendant's treatment plan was medically unacceptable under the circumstances. That his walker was returned after his transfer to a different facility, is sufficient only to show a difference of opinion between medical officials. Sanchez, 891 F.2d at 242 ("A difference of medical opinion does not amount to a deliberate indifference to plaintiff's serious medical needs."); see also Carreon v. Abdur-Rahman, No. 2:17-cv-1292 TLN KJN P, 2019 WL 7370419 at *11 (E.D. Cal. Dec. 31, 2019) (finding defendant doctor was not deliberately indifferent for failing to earlier provide plaintiff with a walker where doctor recommended plaintiff discuss mobility issues with physical therapist); Parnell v. Win, No. 2:18-cv-0220 WBS KJN P, 2020 WL 58292 at *11 (E.D. Cal. Jan. 6, 2020) ("the fact that different doctors . . . provided temporary and/or permanent lower tier/lower bunk chronos does not evidence deliberate indifference).

Plaintiff's belief that he should have a walker shows nothing more than a difference of medical opinion. Franklin, 662 F.2d at 1344 ("A difference of opinion between a prisoner-patient and prison medical authorities does not give rise to a § 1983 claim.").

The court finds that plaintiff has failed to put forth evidence, other than his own opinion, that would show defendant acted with deliberate indifference in determining that he did not need a walker. Accordingly, defendant is entitled to summary judgment on plaintiff's deliberate indifference claim.

**b. Shoulder**

Plaintiff states that defendant failed to review his medical history related to his shoulder injury and failed to render care for his serious medical issues. (ECF No. 78 at 13-14.) However, plaintiff has not identified any specific defect with regard to the medical care he received for his shoulder. He states defendant "feigned ignorance to the condition on 8/7/19 and thereafter and allowed non-treatment and unnecessary wanton infliction of pain." (ECF No. 78 at 24.) "[U]uncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). As with plaintiff's claims related to the removal of his walker, he has failed to show that the treatment relative to his shoulder issues was medically unacceptable under the circumstances. That plaintiff disagreed with the course of treatment provided is insufficient to establish a material factual issue with respect to defendant's treatment of his shoulder.

**B. Retaliation**

**1. Legal Standards**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

/////

**2. Analysis**

Defendant argues that the walker was discontinued on July 30, 2019, and plaintiff's PREA complaint was not filed until August 1, 2019. (ECF No. 63-2 at 11.) In his opposition, plaintiff argues that he made a PREA complaint and filed a grievance before defendant discontinued his walker. (ECF No. 78 at 14.) However, the document purported to be a PREA complaint (ECF No. 78 at 29), appears to be a mental health referral chrono and does not identify defendant or contain plaintiff's allegations regarding defendant's statements during the June 12, 2019, appointment.

Plaintiff also argues that timing can be considered circumstantial evidence of retaliatory intent. (Id. at 15-16.) However, "[r]etaliation is not established simply by showing adverse activity by the defendant after the exercise of protected speech; rather, Plaintiff must show a nexus between the two." Robins v. Lamarque, No. C 03-0797 JSW (PR), 2011 WL 6181435 at *8 (N.D. Cal. Dec. 13, 2011) (citing Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000)).

Plaintiff's speculation that defendant must have known about the grievance and/or PREA complaints is not sufficient to create a material issue of fact sufficient to deny the motion for summary judgment. See Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."); Nelson v. Pima Cmty. College, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

The court will recommend that defendant's motion for summary judgment be granted on plaintiff's retaliation claim because plaintiff has failed to show there is a genuine issue of material fact regarding defendant's knowledge of plaintiff's protected conduct. See Davis v. Harris, No. 2:19-cv-1976 JAM PDP (PC), 2022 WL 584211, at *5 (E.D. Cal. Feb. 25, 2022) (granting summary judgment on retaliation claim because plaintiff "presented no evidence that [defendant] knew of his protected activity"); see also Halloum v. Ryan, No. CV 11-0097 PHX RCB, 2014 WL 1047144 at *7 (D. Ariz. Mar. 18, 2014) (granting summary judgment where plaintiff submitted no probative evidence that defendant was aware of plaintiff's protected conduct).

Moreover, defendant argues that the walker was removed because he determined it was not medically necessary. (ECF No. 63-2 at 11.) Thus, he has put forth a legitimate non-retaliatory motive for his action. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (The defendant may prevail if he shows that he would have reached the same decision absent the protected conduct.).

**C. Equal Protection**

**1. Legal Standards**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. Calif. Dept. of Corrs. and Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against plaintiff based on his membership in a protected class. Hartmann, 707 F.3d at 1123. “Homosexual persons are protected from discrimination by the Equal Protection Clause.” Neal v. Borders, No. EDCV 19-126_JAK (KK), 2019 WL 632955 at *4, (C.D. Cal. Feb. 14, 2019) (citing Romer v. Evans, 517 U.S. 620, 631-36 (1996)). Plaintiff must present evidence of discriminatory intent to establish a violation of the Equal Protection Clause. See More v. Farrier, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination courts should defer to judgment of prison officials); see also Washington v. Davis, 426 U.S. 229, 239-40 (1976); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).

To defeat summary judgment on his equal protection claim, plaintiff must set forth specific facts showing there is a triable issue as to whether: (1) he was treated differently form similarly situated inmates; (2) such unequal treatment was not reasonably related to a legitimate penological objective; and (3) such unequal treatment was the result of invidious discrimination against plaintiff. Smith v. Woodford, No. C 04-4793 RMW (PR), 2012 WL 2061535 at *4 (N.D. Cal. June 7, 2012); see also Washington v. Harper, 494 U.S. 210, 223-25 (1990) (question before

////

the court on equal protection claim is whether the regulation or practice claimed to violate the inmate's right to equal protection is reasonably related to legitimate penological interests).

**2. Analysis**

Defendant argues that even if he made the statements as alleged by plaintiff, such statements fail to state a claim for violation of the Fourteenth Amendment's Equal Protection Clause. (ECF No. 63-2 at 11-12.) Defendant further argues that the complaint does not allege facts suggesting that plaintiff was treated differently than other similarly situated inmates. (Id. at 12.) Finally, defendant alleges that there are no allegations showing that plaintiff was denied "anything to which he was entitled or that other inmates received." (Id.)

In the opposition plaintiff argues that defendant's words and actions indicate that he acted with discriminatory intent. (ECF No. 78 at 17.) However, "[p]laintiff's conclusory allegations of discriminatory intent are not sufficient to defeat summary judgment." Smith, 2012 WL 2061535 at *5 (citing Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988)) see also Magan v. Commonwealth of N. Mariana Islands, 107 F.3d 1436, 1448 (9th Cir. 1997) (mere conclusory allegations of discriminatory intent are insufficient to avert summary judgment); Furnace v. Sullivan, 505 F.3d 1021, 1031 (9th Cir. 2013) (allegations of discriminatory intent fail "to show that [plaintiff] was treated differently" than similarly situated individuals).

Further, "[a] plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1028 (9th Cir. 2001). Bare speculation and conclusory allegation is not sufficient to create a genuine issue of material fact supported by evidence. See Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

Defendant argues in the reply, plaintiff has not provided any evidence indicating defendant removed his walker based on his sexuality. (ECF No. 81 at 6.) Rather, defendant alleges it was removed based on his determination that it was not medically necessary. (Id.) In support of his argument that his walker was removed based on his sexual orientation, plaintiff has provided a group appeal form dated August 2, 2019. (ECF No. 78 at 50-51.) The appeal, signed

by plaintiff along with fourteen other inmates, alleges that defendant "is bias, rude, extremely unethical, prejudice towards gays, transgenders, whites, Latinos, blacks, refuses to look at previous medical exams and deliberately ignores other doctors['] diagnostics." (Id. at 50.) They request that their walkers be returned. (Id.) However, that defendant has "made a practice of confiscating" walkers from other inmates, fails to show that the removed plaintiff's walker from him because of his sexual orientation. Rather, it tends to show that plaintiff was not treated differently from other inmates based on his sexual orientation.

Accordingly, the undersigned finds that plaintiff has failed to show a genuine issue of material fact that would preclude summary judgment on his equal protection claim.

**D. Qualified Immunity**

Defendant argues he is entitled to qualified immunity because the medical care he provided was objectively reasonable and he did not violate any clearly established right. (ECF No. 63-2 at 14.) However, because the undersigned has determined that there was no constitutional violation there is no need to analyze the parties' arguments regarding qualified immunity. See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all."); see also Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED that plaintiff's request for additional discovery pursuant to FRCP 56(d) is denied.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 63) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, either party may file written

objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 28, 2022

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Civil.Rights/S/bart1874.msj.fr